**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISETTE POOLE GONZALEZ p/k/a LISETTE POOLE, <br><br> *Plaintiff*, <br><br> v. <br><br> MAXINE PRODUCTIONS, LLC; 7TH FLOOR PRODUCTIONS, LLC, <br><br> *Defendants,* | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT AND COPYRIGHT MANAGEMENT INFORMATION VIOLATIONS** <br><br> **Demand for Jury Trial** |

Plaintiff Lisette Poole Gonzalez p/k/a Lisette Poole ("Poole" or "Plaintiff"), by and through her undersigned counsel, for her complaint against Defendants 7th Floor Productions, LLC ("7th Floor"), Maxine Productions, LLC ("Maxine") (with 7th Floor and Maxine each a "Defendant" and, collectively, "Defendants"), alleges upon personal knowledge as to her own conduct and upon information and belief based on the investigation of Plaintiff's counsel as to all other conduct, as follows.

**I. INTRODUCTION**

1. This is an action for copyright infringement and violations of the Digital Millennium Copyright Act arising from Defendants' unauthorized and unaccredited exploitation of Plaintiff Lisette Poole's copyrighted photographs far beyond the limited rights the parties had expressly negotiated.

2. Poole is an award-winning independent professional photographer and photojournalist. Defendants are seasoned media production companies operating within the Sony Pictures Television Nonfiction structure. The photographs at issue depict Joe Francis, the notorious founder of the "Girls Gone Wild" media franchise and the central subject of

1

Defendants' documentary series *Girls Gone Wild: The Untold Story*, and were created by Poole during a 2022 photojournalistic shoot at Francis's estate in Mexico.

3.    In 2024, after months of negotiation, the parties executed a license agreement that was materially narrower than Defendants had initially sought. That agreement identified by filename and thumbnail the 72 specific photographs authorized for in-series use and created only a narrow and conditional promotional carveout limited to two pre-approved, unmodified images for use exclusively in press releases, with mandatory attribution to Poole.

4.    Defendants honored neither restriction. When the series was released, it included at least five photographs that were not among the 72 licensed images. Defendants also used two photos in commercial contexts without obtaining Poole's prior approval, outside the narrow promotional carveout the parties had negotiated, and without attribution to Poole as the agreement expressly required. In doing so, Defendants also significantly altered one of those promotional-use images, creating an unauthorized derivative work.

5.    Defendants' failure to include attribution in the materials they distributed predictably resulted the distribution and widespread downstream reproduction of the two photos without credit to Poole, or with credit attributed to others.

6.    Poole brings this action for copyright infringement under 17 U.S.C. §§ 101 *et seq.* and for violations of the copyright management information provisions of the Digital Millennium Copyright Act under 17 U.S.C. § 1202. Poole seeks relief including actual damages and disgorgement of profits under 17 U.S.C. § 504(b), statutory damages under 17 U.S.C. § 1203 and, to the extent available, 17 U.S.C. § 504(c), injunctive relief, and all other relief to which she is entitled.

## II. THE PARTIES

2

7.      Plaintiff Lisette Poole Gonzalez, professionally known as Lisette Poole, is an American professional photographer who resides in Mexico City, Mexico, while working internationally.

8.      Defendant Maxine Productions, LLC is a limited liability company organized under the laws of the State of New York (DOS ID: 1727296), with its principal place of business in this District at 96 Morton Street, 4th Floor, New York, NY 10014.

9.      Defendant 7th Floor Productions, LLC is a limited liability company organized under the laws of the State of California (Entity No. 201316310308), with its principal place of business at 6007 Sepulveda Boulevard, Van Nuys, California 91411.

10.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's principals, vice-principals, officers, directors, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's principals, vice-principals, officers, directors, executives, management, agents, servants, or employees.

### III. JURISDICTION AND VENUE

11.     As this is a civil action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*., and for violations of the Copyright Management Information provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, this Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (copyrights).

3

12.     This Court has personal jurisdiction over Defendant Maxine because it maintains its principal place of business in this District. This Court also has personal jurisdiction over both Defendants because, upon information and belief, each Defendant has purposefully availed itself of the privileges of conducting business in the State of New York and within this District, has transacted business and committed acts giving rise to Plaintiff's claims within this District—including the creation, distribution, and public display of the Series and related promotional materials—and has derived and continues to derive substantial commercial benefit from those activities within this District, causing injury to Plaintiff here.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to this action occurred in this District, Defendant Maxine maintains a its principal place of business in this District, and Defendants have committed acts of infringement within this District.

## IV. FACTUAL ALLEGATIONS

### A.  Defendants and the *Girls Gone Wild* Documentary Series

14.     Defendant 7th Floor Productions, LLC ("7th Floor") is, upon information and belief, a film and television production entity founded in 2013 by producer Eli Holzman, whom public records identify as the company's chief executive officer and managing member.

15.     7th Floor is, upon information and belief, among the production companies operating within the broader nonfiction television business built by Eli Holzman through Industrial Media, Inc., a holding company for numerous entities producing nonfiction and unscripted programming across a wide range of networks and platforms.[1]

---

[1] Eli Holzman, Chief Executive Officer, The Intellectual Property Corporation, https://theipcorp.com/ipc-leadership/eli-holzman/.

4

16.     In 2022, Sony Pictures Television ("SPT"), a division of Sony Pictures Entertainment, acquired Industrial Media, Inc. and its portfolio of production companies—including, upon information and belief, Defendant 7th Floor—from Eli Holzman for approximately $350 million dollars.[2] As part of that transaction, Holzman was named President of SPT's documentary and unscripted content division.[3]

17.     Later in 2022, Holzman teamed with veteran producer Mary Robertson to found Defendant Maxine Productions, LLC ("Maxine") as a joint venture to develop and produce journalistically oriented nonfiction programming.[4]

18.     Upon information and belief, 7th Floor and Maxine jointly developed, produced, and distributed the documentary series *Girls Gone Wild: The Untold Story* (the "Series"), and both entities are credited as producers of the Series. Upon information and belief, both Defendants participated in the sourcing, clearance, production, and exploitation of the audiovisual content and related promotional materials associated with the Series.

19.     Both Defendants operated throughout the development, production, and exploitation of the Series with a high degree of commercial sophistication in the acquisition, licensing, and management of third-party creative assets, including photographs, for use in documentary programming and related promotional campaigns. Each accordingly had the ability, opportunity, and professional obligation to ensure that third-party material used in the Series was properly cleared, licensed, and attributed, and that any such material was deployed in accordance

---

[2] Todd Spangler, *Sony Pictures TV to Acquire Industrial Media, Production Company Behind 'American Idol,' in $350 Million Deal*, Variety (Mar. 3, 2022), https://variety.com/2022/tv/news/sony-pictures-television-acquires-industrial-media-american-idol-1235195411/.

[3] Sony Pictures Television, *Sony Pictures Television to Acquire Industrial Media* (Mar. 3, 2022), https://www.sonypictures.com/corp/press_releases/2022/0303/sonypicturestelevisiontoacquireindustrialmedia.

[4] See https://www.maxine.productions/about-us

with the governing terms.

### B.  Plaintiff and the Francis Photographs

20.    Plaintiff Lisette Poole is a Cuban-American professional photographer, writer, and filmmaker based in Mexico City whose work has been published internationally by outlets including National Geographic, The New York Times, and Time Magazine. She has received numerous grants and fellowships for her photojournalism, including from the National Geographic Society and the International Women's Media Foundation, and her first book, *La paloma y la ley*, was named one of Time's Best Photobooks of 2019 and is held in the permanent collection of the United States Library of Congress.

21.    Poole generally retains full copyright ownership of her work and routinely licenses it under carefully negotiated, rights-managed terms that define the scope, duration, medium, and context of permitted uses, consistent with standard licensing practices in the editorial and documentary photography market.

22.    In 2022, Poole created a series of original photographs depicting Joe Francis — the controversial founder of the "Girls Gone Wild" media franchise and the central subject of the Series—during a photojournalistic photoshoot conducted at Francis' private estate in Mexico. The shoot required unusual, trust-based access to a sensitive and non-public environment, and the editorial judgments Poole exercised in connection with it are integral to the creative and commercial value of the resulting work.

23.    In connection with a planned feature article by BuzzFeed News ("BuzzFeed) about Joe Francis (the "BuzzFeed Article"), Poole entered into a license agreement with BuzzFeed (the "BuzzFeed License") and provided BuzzFeed's editors with digital files for approximately 132 of the images from the photoshoot (the "Francis Photographs").

6

24.     The BuzzFeed License was narrow and article-specific. It authorized BuzzFeed to use the Francis Photographs Poole provided to it only in connection with the original BuzzFeed Article, and not for later edits, updated publications, or any other project. The BuzzFeed License granted no right to sublicense the Francis Photographs, transferred no ownership interest in them, and—other than a limited three-month embargo period—otherwise left Poole's rights in the photographs fully intact.

25.     In publishing the BuzzFeed article in May 2023,[5] BuzzFeed ran five of the Francis Photographs and publicly credited Poole as the photographer alongside each of them, an example of which is reproduced below:



Francis lives on the Punta Mita property but also rents it out to high-profile guests.

LISETTE POOLE FOR BUZZFEED NEWS

---

[5] Scaachi Koul, *Inside the Stunning Rise and Fall of Girls Gone Wild*, HuffPost (May 18, 2023), https://www.huffpost.com/entry/girls-gone-wild-joe-francis_n_645ee736e4b005be8ff3951e.

7

26.     Poole is the author of, and at all relevant times has owned, the Francis Photographs at issue in this action.

27.     Poole registered the Francis Photographs with the United States Copyright Office under Registration Number VA0002447681, with an Effective Date April 4, 2025.

## C. Defendants' Wrongful and Infringing Conduct

**Access and the Pre-License Use of Plaintiff's Photographs**

28.     When the BuzzFeed Article was published in 2023, Karolina Waclawiak was Editor-in-Chief of BuzzFeed News. After BuzzFeed News was shuttered in 2024, Waclawiak, now BuzzFeed's Head of Documentary and Director of Development, Scripted TV, joined the Series as a producer—bringing with her direct knowledge of Poole's Francis Photographs from her prior editorial role at BuzzFeed.

29.     On May 13, 2024, acting in her capacity as a producer on the Series, Waclawiak emailed Poole to introduce John Pappas, a showrunner from Maxine, and to inquire about licensing the Francis Photographs for use in the Series. Pappas expressed that the production team was "looking to get as many images as possible"—including those that had not been published in the BuzzFeed Article.

30.     Over the next six months, Poole negotiated with Maxine over the scope, terms, and compensation for its use of the Francis Photographs. Maxine sought broad rights to use substantially all of the Francis Photographs across the Series and in wide-ranging promotional contexts. Poole repeatedly objected to that scope, and the negotiation ultimately produced a license materially narrower that what Maxine had initially sought.

31.     During the negotiations, Maxine worked from a broader pool of Francis Photographs obtained through the BuzzFeed editorial pipeline, rather than from Poole directly.

8

The only Francis Photographs Poole ever provided directly to Maxine were four images that Maxine expressly requested and that she transmitted on June 11, 2024; she never provided Maxine with any other Francis Photograph.

32.     Nevertheless, in a September 27, 2024 email, a Maxine representative asserted that Poole had previously sent [their] team about 140" Francis Photographs. That statement could only refer to the 132 images Poole had provided to BuzzFeed in 2022 in connection with the BuzzFeed License, because Poole had sent Maxine only four images directly.

33.     On October 14, 2024, with the parties' negotiation still unresolved, a Maxine representative emailed Poole a link to a Google Drive folder containing "all the photos currently in the series," totaling "around 70" photographs. That communication confirmed not only that Maxine had already incorporated a substantial number of the Francis Photographs into working cuts of the Series before any license had been finalized, but also that it had by then reduced the broader Francis Photograph pool to a specific working set for intended in-series use.

34.     Attached to that same email was a draft license agreement between Poole and Defendant 7th Floor Productions. It was the first time Poole learned that 7th Floor, not Maxine, was the entity that would formally be licensing the Francis Photographs for use in the Series. It was also the full extent of her contact with 7th Floor: Poole never communicated directly with anyone from that entity at any point during the negotiation or thereafter. Her dealings throughout had been conducted exclusively with Maxine.

**The Maxine License and Its Narrow Scope**

35.     On November 8, 2024, Poole returned an executed copy of the license agreement to counsel for Defendants with a handwritten modification to a certain term. Defendants, through counsel, accepted the revision, and returned a fully executed copy as modified to Poole on

9

November 11, 2024 (the "Maxine License").

36.    The Maxine License authorized use of 72 specifically identified Francis Photographs in the Series, listing thumbnail versions and the filename of each (the "Licensed Photos"). No other Francis Photographs were authorized for in-series use.

37.    The Maxine License also included a separate and narrow promotional use carveout. Under its express terms, Defendants were limited to the use of up to two additional Francis Photographs in press-release materials promoting the Series, and only with Poole's prior approval of the specific images selected. Any such use was further limited to "non-cropped, non-modified photos" and required to be accompanied by the "photographer's copyright/name." The Maxine License further provided that any use not specifically authorized by its terms would require further licensing from Poole.

38.    The promotional carveout was therefore conditional: no promotional rights arose automatically as to any image. Rather, any such rights attached only to images that Poole had specifically approved in advance, and even then, only in an unmodified form and with the required attribution. Defendants satisfied none of these conditions prior to deploying the Promotional-Use Images.

39.    On November 18, 2024, after the Maxine License had been fully executed, Poole emailed Maxine concerning several issues relating to the Series' impending release. Among other things, she asked Maxine to submit the two photographs they intended to use in press releases for her approval before publication, as required by the Maxine License. She also noted that the photographs in the folder Maxine had previously shared did not appear to have been color-corrected, asked where those files had come from, and observed that on a project of this nature the images would ordinarily be professionally toned with the photographer's involvement.

10

40.    On November 22, 2024, counsel for Defendants responded only to Poole's request concerning the form of her credit in the Series and did not address her requests concerning the provenance and preparation of the image files or the need to submit the two press-release photographs for her approval before publication.

41.    Defendants nevertheless proceeded to deploy the Promotional-Use Images ahead of the Series' December 3, 2024 premier without ever submitting those images to Poole for the prior approval required by the Maxine License, and without resolving Poole's contemporaneous questions about the source and preparation of the files they were using.

**Unlicensed In-Series Use**

42.    Despite the Maxine License's deliberate specificity, which identified the 72 Licensed Photos by thumbnail and filename, the Series as released to the public included at least five Francis Photographs that were not among the Licensed Photos (the "Unlicensed In-Series Photos"). The screenshots reproduced below reflect one identified appearance of each such photograph, but do not necessarily capture the full number or frequency of those photographs' appearances throughout the Series:



43.    The Unlicensed In-Series Photos were among the Francis Photographs that Poole had originally provided to BuzzFeed in 2022, and that Maxine acknowledged having in its

possession during the 2024 negotiation. Their inclusion in the released Series therefore occurred with no license or authorization from Poole.

**Unauthorized Promotional Use**

44.     Defendants also used two Francis Photographs in promotional materials for the Series (the "Promotional-Use Images"), but those uses never satisfied the conditions required for the Maxine License's narrow promotional carve-out to apply. Defendants never sought or obtained Poole's prior approval of the Promotional-Use Images before deploying them—a condition necessary for any promotional rights to arise under the Maxine License. No promotional rights therefore ever vested, and every promotional use occurred without any operative license.

45.     Even apart from that dispositive failure, Defendants' promotional uses independently failed to satisfy the other conditions that would have governed any permitted use.

46.     The unauthorized nature of those uses was compounded by the manner in which the Promotional-Use Images were deployed. While the Maxine License limited commercial uses to press materials promoting the Series upon its release, Defendants instead used the Promotional-Use Images in a substantially broader range of promotional environments outside that narrow lane.

47.     Defendants' use of the Promotional-Use Images also involved cropping, stylization, compositing, and other visual alterations—including, with respect to at least one image, modifications significant enough to constitute the creation of an unauthorized derivative work.[6] The Maxine License expressly required that any permitted promotional use involve "non-

---

[6] Defendants appear to have cropped Plaintiff's photograph tightly around Francis's eyes and applied a stylized graphic treatment that materially altered the image's original composition,

12

cropped, non-modified photos." Defendants' use of altered versions therefore independently exceeded the scope of any promotional rights Defendants could have held.

48.     The Maxine License also required that any permitted promotional use include attribution to Plaintiff as the photographer or copyright holder. Yet, upon information and belief, Defendants distributed promotional materials incorporating the Promotional-Use Images to media outlets and promotional partners without including attribution to Poole and without instructing downstream recipients to credit Poole in their use of the images.

49.     As a result, not one of the approximately twenty media outlets that reproduced a Promotional-Use Image in connection with coverage of the Series credited Poole; several instead attributed the images to Maxine. Representative examples from *Entertainment Weekly* and *People Magazine*[7] are reproduced here.



**Joe Francis in 'Girls Gone Wild: The Untold Story'.**
Credit: Maxine Productions

---

tone, and visual presentation. A representative example of Defendants' use of this derivative work is reproduced in paragraph 48.

[7] Ryan Coleman, *Joe Francis Says He Doesn't Feel Bad for Women Filmed on* Girls Gone Wild *Because 'They Victimized Me'*, Entertainment Weekly (Dec. 3, 2024), https://ew.com/joe-francis-doesnt-feel-bad-for-women-filmed-on-girls-gone-wild-8752576;
Abigail Adams, *Joe Francis Says Having Daughters Hasn't Changed His View on* Girls Gone Wild: 'Not at All', People (Dec. 4, 2024), https://people.com/joe-francis-says-having-daughters-hasnt-changed-his-view-girls-gone-wild-8754877.



Joe Francis, founder of 'Girls Gone Wild'.
Credit : Maxine Productions

50.     Defendants also deployed the Promotional-Use Images in commercial contexts

beyond distributed press materials, including streaming-platform storefronts, series landing

pages, without providing attribution to Poole in any of those placements. Representative

examples from Amazon Prime and Apple TV are reproduced here:[8]



51.     Maxine further used both Promotional-Use Images on its own website without

providing attribution to Poole,[9] even though that promotional environment and its contents are

---

[8] Accessible at, respectively, Amazon Prime Video, https://www.amazon.com/gp/video/detail
/B0F7PD4K2D/ref=atv_dp_share_cu_r, and Apple TV, https://tv.apple.com/us/episode/catch-
me-if-you-can/umc.cmc.2c2k04mbng60b5gvqghbyftle?showId=umc.cmc.3llwj7fbnn7wuz29md
fx1cnbg.

[9] See https://www.maxine.productions/girlsgonewild (last accessed April 6, 2026).

entirely within Maxine's control. The uses remain publicly accessible there as of the filing of this Complaint. Representative examples are reproduced here:

 

52.     Because Defendants never obtained Poole's prior approval for any specific promotional image, the narrow promotional carve-out in the Maxine License never became operative, and all of Defendants' promotional uses therefore occurred outside the scope of any license granted by Poole.

53.     Upon information and belief, most, if not all, of these unauthorized promotional uses remained publicly accessible as of the filing of this Complaint, notwithstanding Poole's January 2026 notice to Defendants identifying them as unauthorized and demanding remediation.

54.     In total, Defendants used six distinct Francis Photographs without authorization: the five Unlicensed In-Series Photos and two Promotional-Use Images, one of which was also among the Unlicensed In-Series Photos.

55.     Defendants are commercially sophisticated entertainment production entities with extensive experience in the acquisition, clearance, licensing, and management of third-party creative assets in documentary programming. Their failure to comply with the express terms of a license they negotiated—including incorporating Poole's photographs into working production materials before securing rights and failing to address Poole's post-execution inquiries regarding file use and approval—reflects an unreasonable departure from standard clearance and rights-

management practices.

**D.  Defendants' Failure to Preserve Plaintiff's Copyright Management Information**

56.     Even if Defendants had obtained Poole's prior approval for the Promotional-Use Images and the Maxine License's narrow promotional carve-out had become operative, any permitted promotional use would still have required attribution to Poole as the photographer or copyright holder, which constitutes copyright management information.

57.     Yet, upon information and belief, Defendants distributed promotional materials incorporating the Promotional-Use Images to media outlets and promotional partners without including attribution to Poole and without instructing downstream recipients to credit Poole in their use of the images.

58.     At all relevant times, Defendants knew that Poole was the author and copyright owner of the Francis Photographs, and that her authorship and attribution were material to any permitted use of those images. Plaintiff's authorship was publicly credited in the BuzzFeed Article; Waclawiak introduced the Maxine production team to Poole specifically to negotiate a license; and the six-month negotiation that followed—in which Poole repeatedly insisted on express attribution requirements—confirmed Defendants' awareness of both her authorship and the materiality of credit as a condition of any permitted use. The Maxine License formalized that understanding, expressly requiring attribution to Poole in connection with any permitted promotional use and prohibiting any cropping or modification without further authorization.

59.     Despite that knowledge, Defendants distributed the Promotional-Use Images to media outlets and promotional partners, without ensuring that Plaintiff's authorship information accompanied those images, and without providing any instruction that Poole should be credited in downstream use.

16

60.    Certain environments in which Defendants deployed the Promotional-Use Images, such as platform storefronts, streaming-service tiles, and similar visual marketing placements, are generally not structured to display authorship or copyright information in any meaningful way. Defendants nevertheless deployed Poole's images into those environments without taking any measures to ensure that attribution accompanied or was otherwise associated with the images, predictably resulting in public display of those photographs without any identification of Poole as their author.

61.    The widespread omission and substitution of Poole's attribution in downstream coverage of the Series was the predictable and foreseeable result of Defendants' distribution of promotional materials that did not include, and did not instruct recipients to include, Poole's authorship information. Defendants distributed those materials to media outlets and promotional partners for the very purpose of further publication and public display, and knew or had reasonable grounds to know that no credit information had been conveyed that would accompany or survive those reproductions, thereby facilitating their own or third-party uses.

### E.  Harm to Plaintiff

62.    As a direct and proximate result of Defendants' conduct, Poole has sustained substantial harm.

63.    Defendants' unauthorized in-series use of the Unlicensed In-Series Photos deprived Poole of the licensing revenue she would have received had Defendants sought authorization for those uses, and commercially exploited photographs that Plaintiff had not agreed to include in the Series.

64.    Defendants' unauthorized promotional exploitation of the Promotional-Use Images similarly deprived Poole of compensation for uses that fell entirely outside the rights she

17

had agreed to grant, including uses across multiple promotional channels and environments, something Poole had successfully resisted during the parties' six-month negotiation, as reflected in the terms of the Maxine License.

65. Defendants' failure to credit Poole in connection with the promotional uses, and their distribution of promotional materials that predictably resulted in widespread downstream reproduction without credit, deprived Poole of professional recognition during the Series' release and publicity window—a period of concentrated media attention during which proper attribution carries particular commercial and reputational value for a working photojournalist.

66. The nature, extent, and duration of Defendants' unauthorized uses, and any profits attributable to those uses, are facts that remain largely within Defendants' possession, custody, and control and cannot be fully determined without discovery.

67. Prior to initiating this action, Poole, through counsel, formally notified Defendants of their unauthorized uses of the Francis Photographs and made a good-faith effort to resolve this matter without litigation. Despite those efforts and Defendants' engagement with Poole's demand, the parties failed to reach a resolution, leaving Poole no alternative but to seek relief from this Court.

68. The full scope of Poole's damages, and all profits attributable to Defendants' unauthorized uses, remain to be established through discovery.

**F. Pre-Litigation Notice and Failure to Resolve**

69. On January 8, 2026, Poole, through counsel, sent both Defendants a formal notice and demand letter identifying Defendants' unauthorized use of the Francis Photographs in the Series and in related promotional materials, and demanding cessation, remediation, and resolution of the matter without litigation.

18

70.    Defendants, through counsel, engaged with Poole's demand, but refused to offer compensation commensurate with the scope and nature of their unauthorized exploitation of the Francis Photographs, leaving Poole no reasonable alternative but to file this action.

71.    Despite being on notice of Poole's claims, Defendants failed to remediate the unauthorized and unaccredited uses described herein, including commercial and promotional uses that remained publicly accessible as of the filing of this Complaint, and continue to exploit Poole's photographs without authorization.

## V. CAUSES OF ACTION

### COUNT I – COPYRIGHT INFRINGEMENT

*17 U.S. Code §§ 106 et seq. (Against All Defendants)*

72.    Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

73.    Plaintiff is, and at all relevant times has been, the sole author and copyright owner of the Francis Photographs at issue, with valid and subsisting registration issued by the U.S. Copyright Office under Registration Number VA0002447681, bearing an Effective Date of April 17, 2025, and with exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, publicly display, distribute, license, and prepare derivative works from those photographs.

74.    As shown above, the Maxine License authorized Defendants to use only the 72 Licensed Photos in the Series and created only a narrow, conditional promotional carve-out— limited to press releases, unmodified images, and subject to Plaintiff's prior approval and mandatory attribution. No other use of Plaintiff's photographs was authorized.

75.    Defendants jointly infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in the following respects:

a. **Unlicensed In-Series Reproduction and Display**. Defendants reproduced and publicly displayed at least five Francis Photographs in the released Series without authorization. These photographs were not among the 72 Licensed Photos and were not covered by any license or permission granted by Plaintiff.

b. **Unauthorized Promotional Reproduction and Display**. Defendants reproduced and publicly displayed two Francis Photographs in promotional materials without satisfying the conditions required for the promotional carveout to apply. Because Defendants did not obtain Plaintiff's prior approval — a prerequisite to any promotional rights arising under the Maxine License — those uses occurred without any operative license.

c. **Unauthorized Derivative Works**. Defendants created unauthorized derivative works by cropping, stylizing, compositing, and otherwise altering the Promotional-Use Images, including at least one image modified sufficient to constitute a derivative work under 17 U.S.C. § 101. The Maxine License prohibited any cropping or modification of images used for promotional purposes.

d. **Distribution Beyond Licensed Scope**. Defendants distributed and caused the further distribution of Plaintiff's photographs in contexts and through channels that exceeded the scope of any license granted—including streaming-platform storefronts, series landing pages, and materials provided to media outlets and promotional partners—even apart from Defendants' failure to satisfy the conditions required for any promotional license to arise.

76.    Each of these acts constituted infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106, including the rights of reproduction, public display, distribution, and the creation

20

of derivative works, and each unauthorized use, reproduction, display, or distribution of Plaintiff's photographs constitutes a separate act of infringement.

77.    Defendants' infringing conduct was carried out with an awareness of Plaintiff's rights, as established by the six-month negotiation that preceded the Maxine License, the express terms of that license, Defendants' pre-license incorporation of Plaintiff's photographs into working cuts of the Series, and their subsequent failure to respond to Plaintiff's post-execution inquiries regarding file delivery and the required press release approval process. Defendants' failure to comply with the express terms of a license they negotiated and executed reflects, at minimum, reckless disregard for Plaintiff's rights.

78.    As a direct and proximate result of Defendants' infringement, Plaintiff has suffered actual damages, including lost licensing fees and other compensatory harm, and Defendants have realized profits attributable to the unauthorized use of Plaintiff's photographs, in amounts to be proven at trial pursuant to 17 U.S.C. § 504(b). Plaintiff further reserves the right to seek statutory damages to the extent discovery reveals additional acts of infringement occurring after the effective date of registration or otherwise qualifying under 17 U.S.C. § 412.

79.    Defendants' conduct has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff, including harm to the exclusivity, value, and control of her copyrighted works. Plaintiff has no adequate remedy at law and is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

## COUNT II – VIOLATIONS OF COPYRIGHT MANAGEMENT INFORMATION PROVISIONS

### 17 U.S.C. §§ 1202, 1203 (Against All Defendants)

80.    Plaintiff incorporates herein by this reference each and every allegation set forth above.

21

81.     Plaintiff's name and authorship information—which constitutes copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202(c)—were associated with the Francis Photographs, including as publicly displayed in connection with the BuzzFeed Article and as expressly required to accompany any permitted use by the Maxine License.

82.     Defendants distributed and publicly displayed the Promotional-Use Images, a subset of the Francis Photographs, and caused them to be further distributed and reproduced by media outlets and promotional partners, without preserving or conveying CMI identifying Plaintiff as the photographer.

83.     Defendants distributed promotional materials incorporating the Promotional-Use Images to media outlets and other downstream recipients without including Plaintiff's authorship information and without instructing those recipients to credit Plaintiff. As a result, numerous downstream reproductions of Plaintiff's photographs appeared without attribution or with substituted attribution crediting other parties.

84.     Defendants also deployed the Promotional-Use Images in commercial environments—including platform storefronts, streaming-service tiles, and similar visual marketing placements—that do not meaningfully display attribution, without taking any measures to ensure that Plaintiff's CMI accompanied or was otherwise associated with those uses.

85.     Defendants took these actions with knowledge that Plaintiff's authorship information was required to accompany any permitted promotional use under the Maxine License, and with knowledge that the Promotional-Use Images would be reproduced and further distributed by media outlets and promotional partners to the public. Defendants also knew, or had reasonable grounds to know, that no CMI had been provided to those recipients and that

22

Plaintiff's authorship information would not accompany or survive those reproductions, thereby facilitating and enabling infringement. To the extent CMI was removed or altered from any copies of the Francis Photographs, Defendants distributed those copies with the knowledge described herein.

86.     Defendants' conduct, as described herein, constitutes a violation of 17 U.S.C. § 1202(b), including the distribution of works and copies of works knowing that copyright management information has been removed or omitted, and knowing, or having reasonable grounds to know, that such conduct will induce, enable, facilitate, or conceal infringement.

87.     As a result of Defendants' CMI violations, Plaintiff has suffered injury, and Defendants are liable for statutory damages under 17 U.S.C. § 1203(c)(3)(B) in an amount not less than $2,500 and not more than $25,000 per violation, as determined by the Court, plus attorney's fees and costs under 17 U.S.C. § 1203(b)(4)–(5).

88.     Each unauthorized publication, display, or distribution of a Francis Photograph without preserved CMI—including in promotional materials distributed to media outlets, on Defendants' own platforms and channels, and in downstream reproductions by third parties—constitutes a separate violation of 17 U.S.C. § 1202 for which Defendants are jointly and severally liable.

## VI. JURY TRIAL DEMANDED

89.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

90.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against both Defendants, jointly and severally, and grant the following relief:

23

a.  A declaration that Defendants have infringed Plaintiff's copyrights in the Francis Photographs in violation of 17 U.S.C. § 106;

b.  A declaration that Defendants have violated Plaintiff's rights in copyright management information in violation of 17 U.S.C. § 1202(b);

c.  Permanent injunctive relief under 17 U.S.C. § 502, enjoining Defendants and their agents, employees, successors, licensees, and all those acting in concert with them from further reproduction, display, distribution, or other exploitation of any of the Francis Photographs in any medium or context without Plaintiff's authorization;

d.  Monetary Relief under 17 U.S.C. § 504, awarding Plaintiff:

   • actual damages sustained as a result of the infringement and disgorgement of all profits attributable to Defendants' infringing acts and not taken into account in computing actual damages, under 17 U.S.C. § 504(b); or, in the alternative,

   • statutory damages for each act of infringement, if and where available, including enhanced statutory damages for willful infringement, under 17 U.S.C. § 504(c);

e.  Monetary Relief under 17 U.S.C. § 1203, awarding Plaintiff statutory damages of not less than $2,500 and not more than $25,000 for each act of CMI removal or omission, under § 1203(c)(3)(B);

f.  An order requiring Defendants to provide a full accounting of all uses of the Francis Photographs, including in-series and promotional uses, and all revenues and profits derived therefrom;

g.  Attorney's Fees and costs pursuant to 17 U.S.C. § 505 and/or § 1203(b)(4)-(5).

24

h.  Pre-judgment and post-judgment interest on all monetary awards at the applicable rate from the date of first infringement;

i.  Such other and further relief as the Court deems just, proper, or equitable under the circumstances.

Dated: April 6, 2025.

Respectfully submitted,

*By: /s/ Bryan Hoben*
Bryan D. Hoben, Esq.
HOBEN LAW GROUP
1112 Main Street
Peekskill, New York 10566
347-855-4008
bryan@hobenlaw.com
SDNY Bar No. BH0213

*Attorneys for Plaintiff*

25